IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LINDA J. DILLON, ) | Case No. 1:18-cv-02681 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | THOMAS M. PARKER |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | **MEMORANDUM OF OPINION** |
| Defendant. ) | **AND ORDER** |
| ) | |

**I.     Introduction**

Plaintiff, Linda J. Dillon, seeks judicial review of the final decision of the Commissioner of Social Security, denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter is before me pursuant to 42 U.S.C. § 405(g) and the parties consented to my jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. ECF Doc. 7. Because the ALJ's decision was supported by substantial evidence and because Dillon has not identified any incorrect application of legal standards, the final decision of the Commissioner must be AFFIRMED.

**II.    Procedural History**

On March 16, 2016, Dillon applied for DIB. (Tr. 166).[1] Dillon alleged that she became disabled on February 25, 2016. (Tr. 166). The Social Security Administration denied Dillon's application initially and upon reconsideration. (Tr. 86, 101). Dillon requested an administrative

---
[1] The administrative transcript is in ECF Doc. 12.

hearing. (Tr. 128). ALJ Joseph G. Hajjar heard Dillon's case on January 24, 2018, and denied the claim in a May 29, 2018, decision. (Tr. 40-48). On September 21, 2018, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). On November 19, 2018, Dillon filed a complaint seeking judicial review of the Commissioner's decision. ECF Doc. 1.

## III. Evidence

### A. Relevant Medical Evidence

Dillon suffers from lumbar spine impairments caused, in part, by a motor vehicle accident on January 23, 2016. (Tr. 43, 252). On January 29, 2016, Dillon reported that her back pain symptoms were made worse by standing, prolonged sitting, lifting, bending, and walking down stairs. (Tr. 252). Dillon's diagnoses were listed as anxiety, depression, diarrhea, hyperglycemia, lymphocytic colitis and nasal congestion. (Tr. 252). A list of Dillon's medications included Buspirone, an anti-depressant medication, which she had been taking since March 2014. (Tr. 253). The physician assessed back pain. (Tr. 253).

An MRI following the accident showed disc degeneration at C6-7, facet arthropathy at L3-4, L4-5, and L5-S1, anterolisthesis of L4-5 and thickened ligamentum flavum. The combination of facet hypertrophy, thickened ligamentum flavum and spondylolisthesis led to an element of moderate spinal stenosis at L4-L5. (Tr. 438).

On May 2, 2017, Orthopedic surgeon, Jeffrey Roberts, M.D., performed a decompressive lumbar laminectomy at L4 on Dillon's back. (Tr. 369). At a follow-up appointment after her surgery, Dillon reported minimal back pain and no left leg pain; she was very happy with her progress. She also reported that the numbness in her hands had resolved and she was not having any neck pain. (Tr. 433). Examination showed that her incision had healed nicely, she had

negative straight leg tests, was able to stand on her toes and her heels, and there was no numbness or tingling in her legs. (Tr. 434).

Dillon returned to see Dr. Roberts on July 12, 2017. She reported mild pain and achiness after going on a long drive with her husband. (Tr. 430). She met with Dr. Roberts again on August 23, 2017. She again reported mild pain – and rated it as a 2/10. She stated that she was much better than she was three months ago. She denied leg pain, numbness or tingling. (Tr. 427). Physical examination showed that she had negative straight leg raises and normal motor strength in both legs. (Tr. 428).

On November 29, 2017, Dillon reported pain in her left side buttock and rated it as 4/10 severity. Her pain was constant and it didn't matter whether she was sitting, standing or walking. (Tr. 424). Physical examination showed that she was ambulating with a normal gait. She had negative straight leg raise tests. Dr. Roberts administered a steroid injection at Dillon's point of tenderness. (Tr. 425).

Dillon started treating with chiropractor, Brian Studer, D.C., on February 1, 2017. (Tr. 455). Dr. Studer referred Dillon to physical therapy. She went to nine physical therapy visits in the summer of 2017, after her surgery. (Tr. 458). Dillon treated with Dr. Studer until September 5, 2017. At her final examination she reported that her neck pain, low back pain and headaches had experienced some improvement, but she continued to have muscle spasms with guarding in her lumbar paraspinals. (Tr. 458). Dr. Studer noted that Dillon was having difficulty sleeping. (Tr. 459).

### B. Relevant Opinion Evidence

#### 1. Treating Chiropractor – Dr. Brian Studer – December 2017

On December 12, 2017, Dr. Studer completed a treating physician's questionnaire related to Dillon's physical limitations. He indicated that his opinion applied as early as January 25, 2016. He opined that she could occasionally lift no more than five pounds and that she could sit, stand and walk for one hour during an 8 hour workday. He opined that she could rarely climb stairs or ladders, bend, stoop, reach, and work with or around hazardous machinery. He opined that she would be absent from work four or more days a month due to her impairments or treatment. (Tr. 491).

#### 2. Consultative Psychologist – Ronald Smith, Ph.D. – May 2016

Ronald Smith, Ph.D., examined Dillon on May 9, 2016. (Tr. 285). Dillon was cooperative and related well to Dr. Smith. She gave a detailed and thorough history of her issues with mental health and her medication history. (Tr. 287). Her responses were direct, to-the-point, and her thinking was well organized. She displayed appropriate and effective expression with a good range of affect. She denied any suicidal thoughts, or significant problems with nervous or scared feelings. Her sensorium and cognitive functioning was normal and her insight and judgment were fairly good. (Tr. 288). Dr. Smith did not suggest any diagnosis. He opined that Dillon should be able to maintain adequate attention and concentration and maintain persistence in the performance of simple or more complex tasks. (Tr. 289).

#### 3. State Agency Reviewing Physicians

In June 2016, state agency reviewing physician, Gail Mutchler, M.D., opined that Dillon was limited to occasionally lifting, carrying, pushing and pulling 50 pounds and 25 pounds

frequently, and further limited her to standing/walking for no more than six hours and sitting for six hours of an eight-hour workday along with other postural limitations. (Tr. 95-97).

In October 2016, Maureen Gallagher, D.O., reviewed Dillon's records and generally agreed with the opinions of Dr. Mutchler. (Tr. 109-110).

### C. Relevant Testimonial Evidence

Dillon testified at the administrative hearing. (Tr. 65-78). She lived in a house with two of her grandchildren and her husband, who was disabled. Her grandchildren were fifteen and six years old. (Tr. 65). She had graduated from high school. She had a driver's license and was able to drive. (Tr. 66). Dillon had previous part-time work at a bakery and seasonal work as a tax preparer (Tr. 67-68).

Dillon helped to take care of her mother-in-law who lived next door. She fixed meals for her and sat with her to make sure she was safe. (Tr. 73).

Dillon was 5'2" and weighed about 200 pounds. (Tr. 66). On a typical day, Dillon drove her granddaughters to and from school and did light housework duties. (Tr. 68). Her husband helped with laundry. They grocery shopped together. She tidied the house and mopped. She cross-stitched and watched TV. She did not spend much time with friends. (Tr. 70).

She could not work because she couldn't stand for long periods of time; walking was painful; and she couldn't sit in the same spot for a long period of time. She had pain in her lower back. She was not taking any medication for her back pain. (Tr. 71). When asked if there was anything else that prevented her from working, she said, "Not that I can think of." (*Id.*) Dillon stated she had not taken any medication for anxiety or depression for a year and three or four months prior to the ALJ hearing. (Tr. 72). It was uncomfortable for Dillon to sit during the hearing. (Tr. 75). Dillon also had depression and mood swings. (Tr. 77).

5

Dillon testified that the back surgery had helped. (Tr. 73). She testified that her ability to sit got better after the surgery. But, by the time of the hearing, she was having a lot of pain with sitting. (Tr. 75). She did not feel she would be able to do the job of tax preparer because of difficulty with sitting. (Tr. 77). She was regularly undergoing spinal injections. (Tr. 75). Dillon could lift a gallon of milk but it caused pain. (Tr. 77).

Vocational Expert ("VE") Samuel Edelman also testified during the hearing. (Tr. 78-84). The VE found that Dillon previously worked as a tax preparer, a sedentary job. The ALJ directed the VE to consider a hypothetical individual of Dillon's age and education with the same past work and to assume that she was limited to light work, but could frequently climb ramps and stairs; could occasionally climb ladders, ropes or scaffolds; could occasionally stoop; and could frequently kneel, couch and crawl. (Tr. 79). The VE opined that this individual could perform Dillon's past work and that his testimony was consistent with the DOT. He further opined that, if limited to sedentary exertion, the hypothetical individual could still perform Dillon's past work. The VE opined that, if the individual required a sit-stand option, she would not be able to prepare taxes in public places like Dillon's past position at H&R Block. However, there would still be a significant number of tax preparer jobs that the hypothetical individual could perform. (Tr. 82). The VE testified that Dillon had not obtained skills that would transfer to a different industry. (Tr. 83).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. Dillon had the severe impairments of degenerative disc disease of the lumbar spine, status-post laminectomy, and obesity. (Tr. 43).

5. Dillon had the residual functional capacity to perform light work, except she could frequently climb ramps and stairs; occasionally climb ladders, ropes and

> scaffolds; she could frequently kneel, crouch and crawl; and could occasionally stoop. (Tr. 45).
>
> 6. Through the date last insured, Dillon was capable of performing her past relevant work as a tax preparer. (Tr. 47).

Based on all his findings, the ALJ determined that Dillon was not under a disability from February 25, 2016, the alleged onset date, through September 30, 2017, the date last insured. (Tr. 48).

## V.     Law & Analysis

### A.     Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Under this standard, the court does not decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). If supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court would reach a different conclusion or evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g); *see also Elam*, 348 F.3d at 125 ("The decision must be affirmed if . . . supported by substantial evidence, even if that evidence could support a contrary decision."); *Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."). This is so because the Commissioner enjoys a "zone of choice" within which to

decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if supported by substantial evidence, however, the court will not uphold the Commissioner's decision when the Commissioner failed to apply proper legal standards, unless the error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, -2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals

8

any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden to produce sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

### B. Medical Source Opinions

Dillon argues that the ALJ erred in assigning less than controlling weight to the opinion of Dr. Studer, her chiropractor.[2] At Step Four, an ALJ must weigh every medical opinion that the Social Security Administration receives. 20 C.F.R. §§ 404.1527(c), 416.927(c).[3] An ALJ must give a treating physician's opinion controlling weight, unless the ALJ articulates good reasons for discrediting that opinion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)). Good reasons for rejecting a treating physician's opinion may include that: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotation omitted); 20 C.F.R. §§ 404.1527(c), 20 C.F.R. § 416.927(c). Inconsistency with nontreating or nonexamining

---

[2] Dillon argues that Dr. Studer is a treating physician. However, because he is a chiropractor, he is considered an "other source," as further explained herein.
[3] 20 C.F.R. §§ 404.1527(c) and 416.927(c) apply because Dillon's claim was filed before March 27, 2017.

9

physicians' opinions alone is not a good reason for rejecting a treating physician's opinion. *See Gayheart*, 710 F.3d at 377 (stating that the treating physician rule would have no practical force if nontreating or nonexamining physicians' opinions were sufficient to reject a treating physician's opinion).

The Commissioner asserts that Dr. Studer is a chiropractor and was properly considered an "other source" rather than an acceptable medical source. For this reason, the Commissioner argues that Dr. Studer's opinion was not entitled to as much deference as a treating physician. ECF Doc. 17 at 10-11. The Commissioner argues that the ALJ properly explained the weight he assigned to Dr. Studer's opinion as an "other source." *Id.*

Under the applicable Social Security Regulations, a chiropractor is not an "acceptable medical source" entitled to the type of "controlling weight" an "acceptable medical source" enjoys. See 20 C.F.R §§ 416.902(a)(1) - (8), 416.927(a)(1), 416.927(f). However, the regulations also provide these opinions still must be considered, using the same factors listed in 20 C.F.R. §416.927(c). The regulations further provide "not every factor for weighing opinion evidence will apply in every case" and the "adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." 20 C.F.R. §416.927(f)(1)-(2).

Social Security Ruling 06-03p, 2006 SSR LEXIS 5 further explains how opinion evidence from "other sources" should be treated. SSR 06-03p, 2006 SSR LEXIS 5 provides information from "other sources" (such as a chiropractor) is "important" and "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 SSR LEXIS 5, 2006 WL 2329939 at *2-3 (August 9, 2006).

10

Interpreting this SSR, the Sixth Circuit has found opinions from "other sources" who have seen the claimant in their professional capacity "should be evaluated using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 541 (6th Cir. 2007) ("Following SSR 06-03p, 2006 SSR LEXIS 5, the ALJ should have discussed the factors relating to his treatment of [the claimant's] assessment, so as to have provided some basis for why he was rejecting the opinion"). *See also Williams v. Colvin*, 2017 U.S. Dist. LEXIS 41384, 2017 WL 1074389 at \*3 (N.D. Ohio March 22, 2017); *Flores v. Berryhill*, 2017 U.S. Dist. LEXIS 214430, \*41-42 (N.D. Ohio Dec. 15, 2017).

> Here, the ALJ evaluated Dr. Studer's opinion, stating:
>
> As for the opinion evidence, the undersigned has considered the opinion of the claimant's chiropractor, Brian Studer, DC, who provided a checklist form regarding her physical limitations on December 12, 2017, a few months after the expiration of the date last insured. The chiropractor indicated the claimant could lift no more than five pounds, could sit, stand, or walk each no more than one hour during an eight-hour workday. This opinion is clearly out of proportion with the claimant's reported activities of daily living, including doing errands, socializing, doing household chores, and providing childcare, as well as with the observations during the hearing that the claimant could sit for 45 minutes without apparent discomfort. Overall, the opinion is inconsistent with the weight of the evidence, and is not entitled to significant weight with respect to the residual functional capacity.

(Tr. 47).

As argued by the Commissioner, the ALJ adequately explained the weight assigned to Dr. Studer's opinion, considered an "other source" under the regulations. The ALJ was not required to provide as detailed an explanation for a chiropractor's opinion as he would have been required to provide for an acceptable medical source. However, as noted above, he was required to consider how long the source has known the individual, how consistent the opinion was with other evidence, and how well the source explained the opinion. The ALJ expressly stated that

11

Dr. Studer's opinion was not consistent with the other evidence. Perhaps the ALJ could have provided a better explanation of his decision. But, as explained below, he *did* provide an explanation of his decision. And, because Dr. Studer was an "other source" and not an "acceptable medical source" under the regulations, his opinion was not entitled to controlling weight.

The ALJ noted the date that Dr. Studer's questionnaire was completed – recognizing that it was completed few months after the date last insured. (Tr. 47). The date of the questionnaire was significant because Dr. Studer released Dillon from his treatment on September 5, 2017 because she had reached "MMI," or maximum medical improvement, from his chiropractic treatment. Dr. Studer noted that Dillon still had complaints but that her symptoms had improved since her accident and surgery. (Tr. 459). He completed the questionnaire regarding Dillon's physical limitations on December 12, 2017, three months after he released her from his care. And, his opinion does not provide any explanation as to how he was aware of Dillon's condition when he completed the form.

The ALJ found Dr. Studer's opinion to be inconsistent with the weight of all the evidence. (Tr. 47). The ALJ stated he had considered "the entire record" and "all symptoms" in making his RFC determination. (Tr. 45). A review of Dr. Studer's own records illustrates the inconsistency spoken of by the ALJ, although he did not cite many specific examples. Dr. Studer's December 12, 2019 opinion indicated that Dillon could only stand one of eight hours in a work day. (Tr. 491). But Dr. Studer's office chart from September 5, 2017 – the last time he saw Dillon – did not list sitting as a problem that worsened her pain. (Tr. 476). Similarly, Dr. Studer's note from his July 3, and August 8, 2017 visits with Dillon did not show Dillon characterizing sitting as a problem for her. (Tr. 472-473). Indeed, the only records from Dr.

12

Studer that listed sitting as something Dillon had difficulty doing were from before her May 2017 spinal surgery. (*See*, Tr. 466-467).

The ALJ also noted that Dr. Studer had completed a "checklist form." (Tr. 47). Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that "did not cite clinical test results, observations, or other objective findings . . . ." *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016); *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011); *see also Smith v. Comm'r of Soc. Sec*., No. 13-12759, 2015 U.S. Dist. LEXIS 25540, 2015 WL 899207, at \*\*14-15 (E.D. Mich. Mar. 3, 2015)(citing cases); *Ashley v. Comm'r of Soc. Sec*., No. 1:12-cv-1287, 2014 U.S. Dist. LEXIS 35610, 2014 WL 1052357, at \*8 n.6 (W.D. Mich. Mar. 19, 2014) (citing cases). *See Rogers v. Comm'r of Soc. Sec.*, No. 99-5650, 2000 U.S. App. LEXIS 14042, 2000 WL 799332 (6th Cir. June 9, 2000) (treating physician's documentation of impairments on form with checked-off boxes was not entitled to great weight when no further explanation given.)

Here, the ALJ's comment on the checklist form implies that Dr. Studer's opinion was poorly explained. The regulations state that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). Dr. Studer completed a check-the-box form. At question six of the form, he was asked to explain the degree and basis for the restrictions he had opined. Dr. Studer simply stated that Dillon had severe lower back pain, "no repetitive movements, no stooping or squatting or kneeling." In other words, he simply repeated his opinions regarding Dillon's restrictions. He did not provide a "basis" for his

13

opinions. Even in cases where the ALJ has not specifically noted the check-box form of a treating physician's opinion, the Sixth Circuit has upheld a decision affirming the ALJ's decision on such a form. *Ellars,* 647 F. App'x at 568. The fact that the ALJ noted the checklist form here supports his decision that Studer's opinion was not entitled to significant weight.

Finally, the ALJ cited Dillon's reported daily activities in support of his decision to assign little weight to Dr. Studer's opinion. He noted that she could do errands, socialize, household chores, providing childcare, and that she sat for more than 45 minutes during the hearing without any apparent discomfort. (Tr. 47).

Dillon argues that the ALJ's findings contain multiple inconsistencies or inaccurate representations of her actual testimony. ECF Doc. 15 at 6. Specifically, Dillon argues that she was not sitting comfortably at the hearing; she was able to drive – but this did not prove that she could sit for prolonged periods; she provided childcare – but not for small children; she socialized, but "very rarely;" and she ran errands – but only grocery shopping with her husband. ECF Doc. 15 at 7.

In describing Dillon's activities of daily living, the ALJ stated:

> In addition, the claimant's activities of daily living during this period were inconsistent with her allegations of disabling pain levels. She was able to manage her household chores and self-care, as well as care for her grandchildren, one of whom is early school aged. She continued to drive a car, despite her reports of inability to sit for prolonged periods. Further, the undersigned observed the claimant to sit without signs of discomfort for over 45 minutes during the hearing, directly conflicting with her testimony that she could sit only 10 or 15 minutes before changing position.

(Tr. 47).

Dillon objects to the characterization of her testimony, but each of the ALJ's statements finds support in the record. Dillon testified that she tried to keep up with the housework. (Tr. 68,70). She drove her grandchildren to and from school, albeit for short distances. (Tr. 68-69).

14

She helped her younger grandchild, who was six years old and "early school aged," with homework. (Tr. 69). She helped her mother-in-law by making meals for her and sitting with her. (Tr. 73). She went out to lunch and grocery shopping with her husband. (Tr. 70). Dillon testified that she could sit for a half an hour before needing to stand up for 10 to 15 minutes. (Tr. 80-81). She complains that the ALJ did not ask her if she needed to stand during the hearing. However, there is nothing in the hearing transcript showing that she was displaying signs of physical discomfort from sitting. She did state that it was uncomfortable to sit during the hearing, but she did not ask to stand or for a break (Tr. 75, 81-83).[4] The ALJ's findings regarding Dillon's activities of daily living were supported by the record. Dillon may be right that the ALJ somewhat mischaracterized her ability to sit comfortably or how she took care of grandchildren or did housework. But Dillon has not shown how the slight discrepancies between her testimony and the ALJ's description thereof constitutes harmful error. Even if the ALJ had described Dillon's testimony with the precise terms she used, she has not shown that the ALJ's findings about those daily living activities did not have support in the record. I conclude that they did.

Contrary to Dillon's argument, the ALJ was not required to evaluate her chiropractor's opinion in the same manner he would have evaluated an "acceptable medical source." The ALJ adequately explained the weight he assigned to Dr. Studer's opinion. He noted the date of the opinion, the check list form of the opinion, and that it wasn't supported by the evidence as he – the evaluator of the evidence – understood it. Dillon has not identified any error in the ALJ's application of the regulations to her chiropractor's opinion.

---

[4] The court also notes that the VE testified that there would still be a significant number of Dillon's previous job – tax preparer - if a hypothetical individual with Dillon's RFC required a sit-stand option. (Tr. 82-83).

### C. Depression as a Severe Impairment

Dillon also contends that the ALJ erred in failing to recognize her depression and anxiety as severe impairments. Dillon argues that this decision cannot be reconciled with the record. ECF Doc. 15 at 14-16. The Commissioner argues that the ALJ reasonably determined that Dillon did not have a severe mental impairment. Moreover, the Commissioner argues that whether Dillon's anxiety and depression should have been considered severe impairments is irrelevant because the ALJ found that she had a severe impairment and continued with the sequential evaluation process after Step Two. ECF Doc. 17 at 5-6.

The regulations provide that findings of no limitations or only mild limitations generally result in a limitation being found to be non-severe. 20 C.F.R. § 404.1520a(d)(1). ("If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.") *Atterberry v. Sec'y of Health & Human Servs.,* 871 F.2d 567, 572 (6th Cir. 1989) (Record as a whole and a finding that claimant was "somewhat or mildly depressed" showed that claimant did not have a severe mental impairment.); *Carrelli v. Comm'r of Soc. Sec.,* 390 F. App'x 429, 435-436 (6th Cir. 2010) (non-severe mental impairment despite moderate limitations.) An impairment is not considered severe when it "does not significantly limit [one's] physical or mental ability to do basic work activities." § 404.1521(a).

Here, other than listing anxiety as a diagnosis and anti-depressants in her list of medications, there is little information in the record regarding Dillon's anxiety and depression. Dillon's mental examination with the consulting examiner was relatively normal. Dr. Smith did not suggest any diagnosis of mental impairment. He opined that Dillon should be able to

16

maintain adequate attention and concentration and maintain persistence in the performance of simple or more complex tasks. (Tr. 289). Dillon cites three places in the record in support of a finding that her anxiety and depression were severe. ECF Doc. 15 at 14. The first cite is from the transcript of the administrative hearing where Dillon stated that she becomes a "little cranky" at the end of the day from her pain. (Tr. 77). The other two medical records that Dillon cites are listed conditions that Dillon reported when she sought treatment for her back. (Tr. 252, 451). These cites do not support Dillon's argument that the ALJ was required to find that her anxiety and depression were severe impairments. These cites show nothing more than mild limitations (if that) from her mental impairments. Further, when the ALJ asked Dillon what prevented her from working, she said nothing about a mental health condition. In fact, after the ALJ asked Dillon about the lower back problems that affected her ability to stand, walk and sit, he asked if there was anything else that prevented work. And Dillon responded, "Not that I can think of." Tr. 71). Dillon stated she had not taken any medication for anxiety or depression for a year and three or four months prior to the ALJ hearing. (Tr. 72). And she last saw a mental health professional in 2014. (*Id.*) Dillon apparently did not think her depression and anxiety affected her ability to work. Accordingly, the ALJ did not err in finding that Dillon's mental limitations were mild. (Tr. 44).

Moreover, even if it had been error for the ALJ to conclude that Dillon's depression and anxiety were non-severe impairments, the error was harmless. The Sixth Circuit has construed the Step Two severity regulation as a "*de minimis* hurdle" in the disability determination process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988). Under a Social Security policy ruling, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as "severe." SSR 96-3p, 1996 SSR LEXIS 10 (July 2, 1996).

However, once an ALJ determines that at least one of the claimant's impairments is severe, he must consider all of the claimant's severe and non-severe impairments in the remaining steps of the sequential analysis. As argued by the Commissioner, the finding that Dillon's anxiety and depression were non-severe impairments at Step Two was legally irrelevant if the ALJ considered them in the remaining steps of the sequential analysis. *See Anthony v. Astrue,* 266 F. App'x 451, 457 (6th Cir. Ohio 2008), citing *Mariarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987) (holding that the failure to find that an impairment was severe was harmless error when other impairments were deemed severe). In cases such as this, courts examine the decision to determine whether the ALJ actually considered the impairments deemed non-severe at later steps in the sequential analysis. *See Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 191, 2009 U.S. App. LEXIS 19206 (6th Cir. 2009); *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009).

Here, the ALJ determined that Dillon had severe impairments related to her back condition. (Tr. 43) He then considered Dillon's mental impairments at later steps in the sequential analysis. (Tr. 45) Thus, even if he had erred in finding that Dillon's depression and anxiety were non-severe during the relevant time period, his error would have been harmless.

## VI. Conclusion

The ALJ properly evaluated the opinion evidence from Dillon's chiropractor, Dr. Studer. And, he did not err in finding that Dillon's mental impairments were non-severe. Because the ALJ's decision was supported by substantial evidence and because Dillon has not identified any prejudicial incorrect application of legal standards, the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

Dated: September 10, 2019

Thomas M. Parker
United States Magistrate Judge